# JOHN VICTOR PEARSON v. CHARLES NORELL AND ANOTHER.[1]

November 20, 1936.

No. 30,965.

*Flor & Reim* and *L. O. Anthony,* for appellant.
*Robb & Rich,* for respondents.

LORING, JUSTICE.

In a suit to recover damages sustained in an automobile collision the plaintiff had a verdict, the court granted a motion for judgment notwithstanding the verdict, and the plaintiff comes here on this appeal.

The question presented is whether the plaintiff was guilty of contributory negligence as a matter of law. The collision in which the plaintiff was injured occurred about four o'clock p. m. February 28, 1935, at an intersection in Nicollet county formed by trunk

[1]Reported in 269 N. W. 643.

highway No. 22, which runs east and west, and a county aid road which runs north and south. The plaintiff was driving a Chrysler roadster east on trunk highway No. 22, and as he approached the intersection with the county road his view was obstructed toward the north until he arrived approximately 75 feet from the intersection. Thereafter he might have seen a distance of 700 or 800 feet to the northward, but, in looking in that direction, chose to lean forward and look through his windshield to his left rather than through the isinglass in the curtain to his left. So looking he could not see more than about 75 feet to the north. Within that distance he saw no one approaching. There was a vehicle approaching the intersection from the east, driven by Reese. From the north came Arthur Norell, one of the defendants, driving his codefendant's truck on the county aid road—there was at that time no stop sign against the county road—and just as the head end of plaintiff's car was within six feet of the eastern line of the intersection it was struck by the defendant's truck, which weighed about 8,400 pounds unloaded, was 25 feet long, and about 9 feet high. The truck threw the plaintiff's car with great violence toward the south and east, and the injuries complained of resulted.

Reese, as he approached the intersection from the east, saw both the truck and the plaintiff's car approaching the crossing at what he thought was about the same rate of speed. The contention of the defendants is that the plaintiff, had he looked farther to the northward, must have seen the defendant's truck approaching and that his failure so to look and see it convicts him of contributory negligence. We are of the opinion, however, that the evidence presented a question for the jury. Plaintiff had the right of way as against any vehicle approaching from the north. He also had a right to assume, until observation indicated the contrary, that anyone approaching from that direction would comply with the law and yield the right of way to him. It was quite obvious that this duty of yielding the right of way lay upon the defendant driver. He was bound to look to the right and might have seen the plaintiff approaching from that direction when the plaintiff arrived within 75 feet of the crossing. At that time, according to the plain-

tiff's testimony, defendant's truck was not in sight within a like distance to the north, therefore he must have been traveling faster than plaintiff in order to intercept him at the intersection; but, even if he was traveling faster, he should have reduced his speed sufficiently to avoid the collision. It was his duty to do so, and the plaintiff had a right to assume that he would. It is true that the plaintiff did not see him, but he had a right to assume that anyone coming from the north would observe him and yield the right of way unless he actually saw that the southbound vehicle was not going to yield. He was traveling on a trunk highway. The cross-road was a county road, and drivers of vehicles approaching the trunk road could be expected to be more vigilant for the greater hazards to them that were inherent in such an intersection. Chandler v. Buchanan, 173 Minn. 31, 36, 216 N. W. 254. Conversely, the drivers on the trunk road would naturally realize that the hazards of a county road intersection would be less than those where they might cross another trunk road. They would also realize the greater caution taken by ordinarily prudent drivers approaching a trunk highway from a road of lesser importance. It might well be expected that traffic approaching plaintiff on the crossroad would be likely to be observant of traffic on the trunk highway and at least yield to traffic coming from the right. He might well have assumed that if any vehicle were farther to the north than the observation which he took it would be driven according to law and so yield. He did not actually see the truck until it was almost upon him, and then, according to the plaintiff's testimony, the right front wheel of the truck struck the middle of his car. The truck was then endeavoring to turn to the left, and the point of impact was in the southeasterly quarter of the intersection.

It is true that in some of our cases, such as Rosenau v. Peterson, 147 Minn. 95, 179 N. W. 647, 648; Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145, 146; and DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350, some expressions have occurred which may lend some color to a contrary doctrine, and a distinction has been drawn between the care required of a driver who sees and misjudges the speed of an approaching vehicle and one who, though having the

statutory right of way, fails to observe a like peril. Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145. But if we are to have a symmetrical pattern of the law of negligence we must give some force to the statutory right of way, 1 Mason Minn. St. 1927, § 2720-18, and to the doctrine that one need not anticipate the negligence of another until he becomes aware of such negligence. Guthrie v. Brown, 192 Minn. 434, 436, 256 N. W. 898.

In Rosenau v. Peterson, 147 Minn. 95, 97, 179 N. W. 647, plaintiff's view to her right, from which direction defendant was coming, was wholly obstructed, and the court said it was plaintiff's duty to approach the crossing under such control as to avoid a collision "without regard to the question of the statutory priority of right of way." In that case the defendant, who counterclaimed, was going at an excessive speed and therefore under our present law would have forfeited his right of way. With regard to defendant the court said [147 Minn. 97]:

"Defendant was fully aware of the character of this crossing; he lived in the community. Although on this occasion he had the technical legal right of way over the crossing, he was under obligation to exercise the right with due regard to the safety of others, and to so approach the crossing as to enable him to avoid *unexpected* danger to those approaching from the intersecting road."

We do not think that the language quoted intended to convey the idea that the right of way statute had no effect, or to require a driver to anticipate negligence on the part of some other driver.

In Sorenson v. Sanderson, 176 Minn. 299, 302, 223 N. W. 145, the plaintiff entered the danger zone "unmindful of and oblivious to the impending peril." But the court said [176 Minn. 300]:

"A driver frequently and quite naturally observes the absence of approaching vehicles within a reasonable distance rather than tries to see what he may discover in the harmless distance."

And later in the opinion the court recognized a driver's right to assume that the legal right of way would be yielded by cars observed to be approaching.

In DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350, the defendant had the statutory right of way. In Guthrie v. Brown, 192 Minn. 434, 256 N. W. 898, plaintiff as she entered an intersection observed defendant's car a block away, and it was held that she might reasonably assume that he would diminish his speed and yield the right of way. We think that the same rule should be applied where a driver takes an observation which under the circumstances should disclose an approaching vehicle within the danger zone. In the case at bar the plaintiff had the right of way on a trunk highway, and there were no vehicles apparent on the subordinate road within a distance to his left equivalent to his own distance from the intersection. A jury might well say that his observation was all that was required of a prudent driver under the circumstances. This does not mean that a driver may blindly go blundering into the intersection without taking any observation. It is his duty to look both ways, but where, as the plaintiff did, he looks to his left a sufficient distance to see that no one is nearer to the crossing than he is and there is a clear road for a distance within which a more distant vehicle might reasonably be expected to be able to diminish its speed so as to avoid "reasonable danger of collision," he may direct his vigilance in other directions and need not be held as a matter of law to be guilty of contributory negligence because he does not observe a more distant approaching vehicle which is about to violate the statute. Kunz v. Thorp Fire-Proof Door Co. 150 Minn. 362, 364, 185 N. W. 376. It seems to us that reasonable men might conclude that in the situation as it existed he was in the exercise of ordinary care. It is true that he took his observation to the left through his windshield, and had he looked through the isinglass in his curtain he might have seen to a much greater distance; but the jury might well have found that the observation which he did take was sufficient to advise him that no vehicle was apparently within striking distance if it observed the law. Upon the whole record we are of the opinion that the order of the trial court should be reversed.

Reversed.

Stone, Justice (dissenting).

I cannot agree that the evidence shows any precaution on the part of plaintiff which can be considered as "actual observation" or any careful attempt thereat. Upholding the jury's negation of contributory negligence comes near to establishing a rule which will relieve the chauffeur having the statutory right of way of all duty of care in respect to traffic approaching an intersection from his left. The idea of permitting a mere inattentive glance, through the windshield instead of through the side window, to satisfy the requirement of due diligence does not appeal to me. I simply cannot perceive how ordinary diligence could have failed to discover to plaintiff the huge truck, a veritable bungalow on wheels, which was as close to the crossing as was plaintiff's vehicle.