HELMER J. NORBY v. ERICK KLUKOW.
DARRYL KLUKOW, A MINOR, BY ERICK KLUKOW, HIS
FATHER AND NATURAL GUARDIAN, v.
HELMER J. NORBY.

81 N. W. (2d) 776.

March 8, 1957—Nos. 36,871, 36,870.

*Floyd V. Nichols* and *Meighen, Sturtz & Peterson,* for appellant.
*Peterson, Peterson & Nordin,* for respondents.

DELL, CHIEF JUSTICE.

These actions arise out of an automobile-tractor collision which occurred at the intersection of a private driveway and a graveled road in rural Freeborn County. Helmer J. Norby, who will be referred to as the plaintiff, was the owner of the automobile which, at the time of the accident, was being driven by his son, Alan James Norby, 18 years of age. He will be referred to in this opinion as Jim as he was throughout the trial. Erick Klukow, who will be referred to as the defendant, was the owner of the tractor which, at the time of the accident, was being operated by his son, hereinafter referred to as Darryl, who was then 14 years and 8 months old.

The plaintiff brought the first action against the defendant to recover for the damages to his automobile. The defendant counterclaimed for the medical and hospital expenses incurred by him for Darryl and for the loss of Darryl's services. Darryl brought the second action, through his father as natural guardian, to recover for his personal injuries. The cases were consolidated for trial as

they are upon this appeal. In the first action the jury returned a verdict for the defendant on his counterclaim in the sum of $2,250. In the second action the jury returned a verdict for Darryl in the sum of $12,000. These appeals were taken from orders denying plaintiff's motion in the alternative for judgments notwithstanding the verdicts or for a new trial in both cases. The parties are agreed that six basic questions are involved and they will be treated separately.

■ Plaintiff's first contention is that as a matter of law Jim was not guilty of negligence. We cannot agree. Jim was driving the automobile west on the graveled road approaching the private driveway upon which Darryl was operating the tractor. The driveway enters the graveled road from the north. To the west of the driveway is a grove of trees. The sun was setting and interfered with Jim's vision, so he claimed, particularly to the northwest. The graveled road comes to a crest 1,110 feet east of the driveway and descends westerly to a point approximately 200 feet east of the driveway from which point it ascends in a westerly direction beyond the driveway and then curves to the northwest. The tractor was of a bright orange color. Jim testified that he was traveling between 50 and 60 miles an hour along the highway as he approached the driveway; that he could not see off to the right side of the road where the Klukow tractor was entering because his vision was obscured by the setting sun and because the sun and trees cast a shadow over the driveway. He did not decrease his speed, and he testified that when he was about 100 feet from the tractor he first noticed it in front of him on the north half of the graveled road. He was still driving between 50 and 60 miles an hour. He immediately applied his brakes and swung to the left. The automobile struck the front left side of the tractor, tore off both of its extremely heavy front wheels, bent its sturdy frame, and spun it around. The automobile laid down skid marks approximately 120 feet in length.

Under these circumstances the jury was justified in finding that Jim was driving at a speed greater than was reasonable and prudent under the conditions and hazards then existing in violation of M. S. A. 169.14. Assuming his testimony to be true, he did not re-

duce his speed even though he was driving in a place where it was difficult for him to observe conditions ahead and particularly on the side of the road to his right. In fact, from the damage to the vehicles, the length of the skid marks, and the circumstances surrounding the accident, the jury could well have concluded that Jim was driving at a greater speed than he admitted. Norton v. Nelson, 236 Minn. 237, 241, 53 N. W. (2d) 31, 34.

The plaintiff cites as controlling Behr v. Schmidt, 206 Minn. 378, 288 N. W. 722. In that case, however, there was no evidence tending to show that the plaintiff was not exercising ordinary care.[1] In the instant case there is such evidence, and we have no trouble in concluding that the issue of Jim's negligence was for the jury.

■ Plaintiff claims that Darryl was guilty of negligence and contributory negligence as a matter of law. The private driveway inclined toward the graveled road. Darryl testified that when he was approximately 10 feet from the road he stopped the tractor and looked to his right or west toward the sharp northwest curve in the graveled road. He then looked to the east and then looked back again to the west "Because my Dad has warned me about this dangerous sharp curve." He said that when he looked to the east he could see up to the crest of the hill and that "There was nothing on the road." He then started to cross the road, intending to turn east on it. When the tractor was partly over the center line of the road, he first noticed the Norby automobile 200 feet away. The tractor was then headed southeast, traveling between three and four miles an hour. Realizing that an accident was imminent he "pulled the throttle open" to increase his speed in an effort to clear the path of the automobile and avoid a collision but was unable to do so. The vehicles collided about 3½ feet south of the center of the road. Considering the topography of the road, the view of Darryl, and the speed at which the jury was justified in finding that Jim was traveling, we cannot say, as a matter of law, that the Norby automobile was in sight at the time Darryl made his observation to the

---

[1]See, also, Boerner v. Wiemann, 206 Minn. 548, 289 N. W. 562, where the plaintiff was held not to be contributorily negligent as a matter of law.

east, nor can we say, as a matter of law, that the circumstances required him, before proceeding ahead, to take a second look to the east after he had concluded, as a result of his first observation, that it was safe to cross the highway.[2]

The cases relied upon by the plaintiff are clearly distinguishable. For example, in Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007, the defendant was held negligent as a matter of law where, although he said he looked to the right and saw nothing, the plaintiff's car at that time was in plain sight approximately 100 feet away. And in Behr v. Schmidt, 206 Minn. 378, 288 N. W. 722, defendant was held negligent as a matter of law in driving from a field onto a highway without looking after passing obstructions to his view, consisting of bushes or trees, at a time when, if he had looked, he could have seen plaintiff's car coming down the hill. Considering the evidence here as a whole we conclude that the issues of Darryl's negligence and contributory negligence were for the jury.

■ Plaintiff next contends that it appears, as a matter of law, that Darryl's injuries were not caused by the accident. There is no merit to this contention. While there was evidence of a preexisting condition, there was also evidence that it was causing Darryl little or no difficulty prior to the accident. The evidence was ample to show that this preexisting condition was aggravated by the accident to a very substantial degree. This evidence included the expert testimony of an orthopedic specialist that, in his opinion, to a reasonable medical certainty the trauma suffered by Darryl at the time of the collision was a substantial contributing and aggravating cause of his ultimate condition. The jury could well find that a very substantial part of Darryl's disability was due to the injuries received in the collision.

■ Plaintiff claims that as a matter of law defendant failed to prove that Jim, in using the automobile of the plaintiff at the time of the accident, was plaintiff's agent and that, therefore, Jim's con-

---

[2]Kolatz v. Kelly, 244 Minn. 163, 171, 69 N. W. (2d) 649, 655; Hierl v. McClure, 238 Minn. 335, 56 N. W. (2d) 721; Bosell v. Rannestad, 226 Minn. 413, 33 N. W. (2d) 40.

tributory negligence, under such cases as Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945, was not imputable to the plaintiff so as to prevent his recovery for the damages to his automobile. Under the evidence, the instructions of the court, and the verdicts returned by the jury in both cases, it necessarily follows that the jury found that Darryl was free from negligence and that this was the reason why plaintiff did not recover damages in his action; that recovery was not denied plaintiff because of Jim's contributory negligence. Thus there is no occasion to discuss the sufficiency of the evidence to support a finding that Jim was plaintiff's agent in the operation of the automobile at the time of the collision.

■ Plaintiff's contention that both verdicts are excessive, that they were not justified by the evidence, were contrary to law, and were given under the influence of passion and prejudice, is without merit. Defendant's verdict on his counterclaim was $2,250. Defendant's special damages for hospital and medical expense for his son, Darryl, were $1,261.35. The remainder of $988.65 for loss of his son's services was well within the value of those services as established upon the trial. In this situation we cannot say that the defendant's verdict is excessive, approved as it has been by the trial court.

In the case of Darryl the verdict was $12,000. While the evidence shows that he had a preexisting condition, it also shows that he had little or no difficulty prior to the accident; that he was a normal, active boy, able to do farm work. Following the accident he suffered pain, discomfort, and walked with a limp. His right foot turned out. Finally he was operated on for a slipped capital femoral epiphysis "which means the growth center at the top of the thigh bone slipped off from the main part of the bone and displaced." This condition was brought on by an aggravation caused by the accident. He was hospitalized for three weeks, was placed in a body cast, later used crutches, and at the time of the trial was using a cane. There were permanent limitations of extension, rotation, and abduction of the leg and there was a one-half-inch shortening. There

was expert medical testimony that he was suffering a 20-percent loss of the use of the right lower extremity. With these injuries it cannot be said that Darryl's verdict is excessive.

■ Plaintiff's final assignment of error is directed toward the trial court's refusal to give four of his requested instructions. He claims that the court erred in failing to give the following requested instruction:

"* * * If there is reasonable likelihood of collision it is the duty of the driver of the vehicle on the driveway to delay his entry until the vehicle on the road has passed."

The court did instruct the jury as follows:

"* * * There are certain provisions of the statute that I want to read to you at this time. The first provision, Minnesota Statute 169.20, Subdivision 4, 'The driver of a vehicle entering or crossing a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on such highway.' A vehicle on the highway is approaching within the meaning of the statute when such vehicle is so close that it constitutes—that if it continues in the same course at the same speed there is reasonable likelihood or danger of collision should the vehicle on the driveway enter on or cross the highway."

This instruction fairly and adequately explained the applicable law, and there was no error in the refusal of the court to further elaborate as requested by the plaintiff.[3]

Plaintiff contends the court further erred in refusing to give the following instruction:

"To instruct the jury that until Alan Norby saw otherwise he had a right to expect reasonable care on the part of Darryl Klukow or any other person who might drive from the Eberhardt driveway onto the road."

This contention is adequately answered by quoting from Tilbury v. Welberg, 238 Minn. 91, 97, 55 N. W. (2d) 685, 689:

---

[3]See, Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. (2d) 67; Cameron v. Evans, 241 Minn. 200, 208, 62 N. W. (2d) 793, 798.

"Plaintiff's next assignment of error is based on the refusal of the court to instruct that 'The plaintiff, Glenda Tilbury, had the right to rely on defendant's using due care at the time and place of this collision.' The court's charge respecting the care required of defendant, as well as of plaintiff, was adequate. Negligence and contributory negligence, as well as proximate cause, were sufficiently defined. Both parties had a right to assume that the other would exercise due care until the contrary became apparent. The duty of each to the other is fully covered in the charge. We fail to see that prejudice could result from failure to instruct as requested. If the instruction had been given at all, it should have been given so as to apply to both parties."

Plaintiff next contends that the court erred in refusing to give the following instruction:

"A jury question does not arise on the question of the contributory negligence of a minor, in the case of a bright, healthy and experienced 15-year-old boy who is thoroughly familiar with the area of the accident."

This requested instruction, without further qualification, is meaningless. It is most confusing and misleading and was properly denied on such grounds.[4] This instruction appears to be derived from Steinke v. Indianhead Truck Line, Inc. 237 Minn. 253, 54 N. W. (2d) 777. If so, it is a glaring example of what can happen when lifting a phrase out of context. The complete sentence in that case was as follows (237 Minn. 258, 54 N. W. [2d] 780):

"* * * A jury question on the issue of the contributory negligence of a minor does not arise in the case of a bright, healthy, and experienced 15-year-old bicycle rider who, by daily travel and observation for a substantial period of time, is thoroughly familiar with the area of the accident, and who, relying solely upon a prior observation which so far antedates his entry into a danger zone as to be wholly ineffectual in warning him of approaching vehicles, darts

[4]Fransen v. Martin Falk Paper Co. 135 Minn. 284, 160 N. W. 789; Nichols v. Atwood, 127 Minn. 425, 149 N. W. 672.

blindly (without reducing his speed sufficiently to prepare for a quick stop) from behind a parked vehicle—which obscures his view—into the path of, or against, a passing truck."

Obviously, from a mere casual review of the evidence, no such rule would apply in the instant case. Plaintiff also claims that the court erred in instructing the jury that Darryl was to be held only to that standard of care that can be expected of an ordinarily prudent boy of his age under the same or similar circumstances. The court was right. This correctly states the law in Minnesota.[5]

Plaintiff finally contends that the court erred in refusing to give plaintiff's requested instruction relating to the issue of damages caused by aggravation of a preexisting condition. The court did give an instruction on this subject which instruction was approved as technically correct in a similar situation in Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561. A review of the instruction as a whole indicates that it conveyed to the jury a clear and correct understanding of the law applicable to the case and was, therefore, sufficient.

The motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, was properly denied.

Affirmed.

[5]Steinke v. Indianhead Truck Line, Inc. *supra;* Demmer v. Grunke, 230 Minn. 188, 42 N. W. (2d) 1.